UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOJO DEOGRACIAS EJONGA,

                Plaintiff,

   v.

STEPHEN SINCLAIR, et al.,

                Defendant.

CASE NO. 2:20-00320-RSM-BAT

**REPORT AND RECOMMENDATION**

Plaintiff, a prisoner at the Monroe Correctional Complex (MCC), filed a *pro se* complaint under 42 U.S.C. § 1983 against Stephen Sinclair, Secretary of Department of Corrections; Michael Obenland, Superintendent MCC; the Department of Corrections (DOC); Roy Gonzalez, Headquarters Correctional Manager; Scott Russell, Assistant Secretary Department of Corrections; Carla Schettler, Associate Superintendent Washington State Penitentiary; Lee Stemler Grievance Coordinator MCC; and David Heise, Maintenance Supervisor MCC. *See* Dkt. 6 (Complaint).

Plaintiff alleges defendants violated his rights under the Fifth, Eighth, Seventh, and Fourteenth Amendments to the United States Constitution and that they also violated the American with Disabilities Act (ADA). *Id.* at 14. As relief, plaintiff seeks monetary damages, an order preventing defendants from limiting the amount of mail a prisoner may receive from

REPORT AND RECOMMENDATION - 1

1  government entities, and an order directing defendants to address concerns plaintiff has alleged
2  and to submit a report to the Court. *Id.* at 22-23.

3  On September 29, 2020, defendants moved for summary judgment. Dkt. 22. After
4  granting plaintiff an extension to respond, and defendants an extension to reply, the matter is
5  now ripe for review. The Court has considered the pleadings and the record and recommends for
6  the reasons below, that defendants' motion for summary judgment be GRANTED and the case
7  be DISMISSED with prejudice.

## BACKGROUND

### A.    The Complaint

Plaintiff is serving a 66-year sentence for three counts of first-degree attempted murder. He alleges he has been "appealing" his criminal case *pro se* since 2013. Dkt. 6 at 15. In 2017, plaintiff alleges he became aware the police and King County Prosecuting Attorney "destroyed evidence" connected to his case. *Id.* On December 17, 2017, King County Deputy Prosecutor Johnson responding to plaintiff's public records act (PRA) request, mailed plaintiff 138 photos related to plaintiff's criminal case. *Id.* at 16.

On December 20, 2017, plaintiff received a rejection notice from the prison that the 138 photos exceeded the DOC's policy 450.100-IV. Under the policy inmates are limited to receiving no more than 10 photos per mailing. Plaintiff appealed the rejection notice arguing the photos were relevant to his criminal conviction. Plaintiff alleges the individuals involved in denying him all the photos mailed include Sammi Mueke, mail room; Carla Schettler, associate superintendent, and Ray Gonzalez, headquarters correctional manager. *Id.* at 17.

In November 2018, plaintiff was transferred to MCC based upon a recommendation that MCC was suitable for plaintiff's mental health needs. *Id.* Plaintiff was placed on the first floor in

a single person cell. Plaintiff alleges the unit "smelled badly" and there was no "fresh air." *Id.* Plaintiff alleges the bad smell made it difficult to eat, breath or sleep. Plaintiff notified unit officers Jones and Parks about the smell and eventually filed grievances. The level I response to plaintiff's grievance was handled by Lee Stemler who indicated David Heise was consulted and that there are "no issues with the system that would cause gasses or smell to come from the drain," though smell could occur from time to time. *Id. at 18.* Stemler "made clear" defendant Obenland was made aware of the grievance. *Id.* at 18. Plaintiff alleges his appeals to the denial of his grievance have been unsuccessful. *Id.* He also alleges he has increased headaches and his mental health problems have worsened due to the bad smell of the unit. *Id.*

Based upon these facts, plaintiff alleges in Count I that defendants Schettler and Gonzalez violated his First Amendment Rights by declining to allow plaintiff to receive all 138 photos the King County deputy prosecuting attorney mailed in December 2017. *Id.* at 20. Plaintiff claims he was denied "important" information relevant to his appeal and the receipt of the photos do not pose a threat to the prison. *Id.*

In Count II, plaintiff alleges defendants Schettler and Gonzalez violated plaintiff's rights by enforcing DOC policy 450.100-IV because the policy is unconstitutionally overbroad and vague. *Id.*

In Count III, plaintiff alleges defendants Obenland, Russell, Stemler and Heise knowingly subjected plaintiff to a "toxic infected environment" and failed to remedy this situation in violation of the Eighth Amendment. *Id.* at 21.

In Count IV, plaintiff alleges defendant Sinclair violated the First Amendment by enforcing DOC policy 450.100-IV.

REPORT AND RECOMMENDATION - 3

1    And in Count V, plaintiff alleges defendants Obenland, Russell, Stemler, and the
2 Washington Department of Corrections violated the ADA by exposing plaintiff to "an extreme
3 toxic environment." *Id.* at 22.

4    **B.    Defendants' Motion for Summary Judgment**

5    On September 29, 2020, defendants filed a motion for summary judgment contending the
6 Court should dismiss plaintiff's complaint which alleges two unrelated claims arising at two
7 separate Correctional Institutions. Dkt. 22 (Motion for Summary Judgment). Plaintiff's first
8 claim revolves around mail that was rejected under DOC Policy 450.100-IV while plaintiff was a
9 prisoner at the Washington State Penitentiary at Walla Walla. *Id.* at 2. Defendants contend all
10 individuals incarcerated by the DOC are subject to DOC policies including policy 450.100-IV
11 which sets forth the procedures for incoming mail. Defendants contends DOC's mail policies are
12 designed to maintain the safety and security of the institution, that under the policy all inmates
13 are limited to receiving up to 10 individual photographs per mailing, and that photos exceeding
14 that limit are rejected. *See* Dkt. 23, Schneider Decl. ¶ 4, Ex. 1-3. At the time at issue here, DOC
15 policy 450.100 stated in relevant part: "IV.  Incoming Mail . . . D. Offenders may receive up to
16 10 photographs in one mailing. Excess photographs will be rejected."  *Id.* Ex. 1.

17    Defendants contend there are legitimate penological reasons for this limitation. Before
18 the policy was implemented the prisons would receive envelopes with large numbers of photos
19 that would consume significant staff time in sorting the photos. The large volume of photos to
20 handled also potentially delayed the processing and delivery of the mail of other inmates. In the
21 past it was common for inmates to receive large number of photos with sexual undertones. These
22 photos would be traded or sold among inmates. Defendants contends it is a threat to the security
23 of the prisons for offenders to sell, or trade items among themselves. Dkt. 22 at 2. Defendants

REPORT AND RECOMMENDATION - 4

1  contend the 10-photo limit has drastically reduced impermissible inmate trading or sales of
2  items.
3       In this case, on December 20, 2017, the Washington State Penitentiary mailroom
4  received mail for plaintiff that the King County Prosecutor's Office sent in response to a public
5  records act request. The mailing contained over 100 photographs. Schneider Decl. ¶ 7, Ex. 4.
6  Pursuant to DOC policy 405-100-IV mail staff forwarded the first 10 photographs to plaintiff and
7  rejected the remaining photos. *Id*.
8       Plaintiff sent a kite indicating the photo were needed for his criminal appeal. The DOC
9  viewed the kite as a grievance. The DOC concluded the photos were not legal mail but mail that
10 was provided in response to a public records request. Plaintiff does not claim the mail at issue
11 was marked as legal mail or is legal mail. *See* Dkt. 34 at 3. The DOC thus provided plaintiff ten
12 photos and rejected the remaining photographs under policy 405-100.. *Id*. Ex. 4, 5, 9. After
13 upholding the denial of the mail, the prison provided plaintiff 30 days to arrange for what should
14 happen to the mail, i.e. disposal of the mail. The prison received no instructions from plaintiff.
15 *Id*. Schneider Dec., ¶10.
16      Defendants contend plaintiff's second claim revolves around conditions at the MCC.  In
17 November 2018, plaintiff was transferred from the Washington State Penitentiary to the MCC.
18 Dkt. 22 at 4. Plaintiff was medically screened and over the next several months met with mental
19 health providers. Plaintiff reported difficulty sleeping and on one occasion anxiety. *Id*. Mental
20 health staff described plaintiff as smiling and having a happy or content mood. The mental health
21 staff did not indicate in their charting that plaintiff raised concerns about a bad odor or health
22 problems arising from an odor. *Id*.
23

REPORT AND RECOMMENDATION - 5

Four months after arriving at MCC, about March 2019, plaintiff filed a grievance about "sewage stench." Dkt. 25 McKinney Decl, Ex 1. The odor complaint was investigated by defendant David Heise and a grievance response was submitted to plaintiff indicating "maintenance has attempted various actions to resolve the issue." *Id.* at Ex. 1, p. 6. While DOC staff investigated the odor grievance, the maintenance team did not smell a bad odor. *Id.* Plaintiff did not complain of mental or physical problems in his grievance or at later meetings with his mental health providers. *Id.* Ex. 1, p. 5. Rather plaintiff indicated his desire to remain at MCC. Dkt. 24 Rule Decl., Ex. 3, Ex. 4, (custody plan).

Defendants also contend they expended significant resources to investigate and improve the sewer system to address or prevent bad odors. Defendants contend it is not easy to identify the source of a problem that causes intermittent bad odors. Dkt. 26 Landis Decl. In July 2017, DOC inspected the plumbing with a pipe camera but did not find any blocks, plugs, disconnections or other problems. *Id.* The State Department of Labor and Industries advised the DOC that while the smell was unpleasant the smell was not sufficient to affect health or to violate OSHA standards. *Id.*

In December 2017, DOC began investigating and theorizing whether ventilation repairs were causing negative pressure to build in the floor drains. *Id.* Working on this theory, in August 2019 DOC began installing new valves in the floor drains, removed sinks that could draw up sewer gas, and repaired a pipe running under the main housing units. Defendants contend the odor almost completely stopped after these measures were taken. *Id.*

## DISCUSSION

**A.    Summary Judgment Standards**

Summary judgment is designed to resolve cases short of trial when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving party is entitled to summary judgment if the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if summary judgment is appropriate, the court must consider whether a particular fact is material and whether there is a genuine dispute as to that material fact left to be resolved. Fed. R. Civ. P. 56(c).

If the nonmoving party bears the burden of proof at trial, the moving party is not required to bring forth any additional evidence in support of the motion if the motion demonstrates the absence of genuine disputes of material facts and that the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Where there is a complete failure of proof concerning an essential element of the non-moving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Id.* at 323.

**B.    Section 1983 Standards**

To set forth a *prima facie* case under § 1983, a plaintiff must establish a deprivation of a federally protected right. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The particular harm complained of must be scrutinized in light of specifically enumerated rights. *Id*. That a plaintiff may have suffered harm, even if due to another's negligent conduct, does not itself demonstrate a violation of constitutional protections. *See, e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[W]here a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.").

### C. Mail Rejection

Plaintiff contends DOC limits placed upon the number of photos he can receive at one time violate his rights in two different ways: First the DOC policy is an unconstitutional infringement upon his First Amendment rights, and second the DOC policy is invalid because it is overbroad and vague.

The Court first turns to petitioner's claim his First Amendment rights were violated when he was not allowed more than 10 photos in one mailing. Inmates retain those First Amendment rights that are not inconsistent with their status as a prisoner or with the legitimate penological objectives of the correctional system. *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). This First Amendment protection is implicated by restrictions on correspondence and receiving of publications. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *see Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148 (9th Cir. 2004).

When incoming mail is legal mail, there are heightened concerns that apply. *See e.g. Hayes v. Idaho Correctional Center*, 849 F.3d 1204, 1208 (9th Cir. 2017). However, not all mail a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998). *See also Hayes v. Idaho Corr. Ctr.*, 849 F.3d at 1211 (9th Cir. 2017) (district court properly dismissed an inmate's claim with respect to mail opened by prison employees outside of his presence from the United States courts, because such mail is not legal mail). Rather, correspondence from a court to a litigant generally contains publically-accessible documents. *Id*.

In this case, the mail did not originate from a protected source, such as plaintiff's attorney. Rather the complaint alleges the photos at issue were obtained via a public records act request. Hence the mail at issue is not "legal mail" and the greater protections afforded the receipt of legal mail are inapplicable to this case as this case involves photographs which are accessible by the public, and which plaintiff in fact accessed via a public disclosure request.

Summary judgment on plaintiff's First Amendment claim is appropriate because plaintiff has failed to raise a genuine dispute of material fact as to whether the rejection of his incoming mail was not reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (a prison regulation that "impinges on inmates' constitutional rights" is valid "if it is reasonably related to legitimate penological interests"); *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004) (*Turner* analysis applies to facial overbreadth and vagueness challenges to regulation of prison mail, in addition to as-applied challenges).

When inmate mail is restricted, courts consider whether the restriction is reasonably related to a legitimate penological interest. The *Turner* decision provides four factors to guide reviewing courts in determining the reasonableness of a regulation. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id*. (citations omitted). A second factor is "whether there are alternative means of exercising the rights that remain open to prison inmates." *Id*. at 90. The third consideration is the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and the allocation of prison resources generally." *Id*. Last, whether alternatives available to the prisoner would have a minimal impact of legitimate governmental interests or have a negative impact on such interests. *Id*.

Both plaintiff and defendants agree the mailing at issue contained photos plaintiff received in response to a public records act request. There is no constitutional right to receive public documents. *See McBurney v. Young*, 569 U.S. 221, 232 (2013) ("This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws."); *Houchins v. KQED*, 438 U.S. 1, 15 (1978) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."). However, plaintiff has a constitutional right to receive mail in general and it is this right that is analyzed here.

The parties agree the King County Prosecutor sent plaintiff more than 100 photos pursuant to his public information act request and that DOC provided plaintiff with the first 10 photos and rejected the remaining photos under DOC policy 450.100.

Plaintiff alleges in his complaint defendants violated his rights because receiving 100 plus photos does not create a threat to the prison. However, defendants are permitted to reject incoming mail when the rejection is reasonably related to legitimate penological interests. Here, defendants have submitted declarations establishing there exists safety and security issues that are implicated when prisoners are allowed to receive and unlimited number of photos. In specific, permitting prisoners to receive mail with no restrictions taxes the resources of the prisons to sort thru the mail and timely process all mail for all inmates. Further, the receipt of large number of photos has in the past led to improper trading and selling of photos among inmates which jeopardizes the security of the prisons. Defendants thus meet the first, third and fourth *Turner* factors.

Defendants also meet the second *Turner* factor because plaintiff has alternative means of exercising his request for the photos. He could have but did not ask the prison to return the

1 photos to King County. Once, returned, he could have asked King County to send the photos in
2 separate batches of ten.

3 Plaintiff indicates his case is different because he was denied photos obtained by a public
4 records request. But that does not obviate the prison's penological interest in limiting the number
5 of photos received in one mailing. *See e.g. Livingston v. Cedeno*, 164 Wn.2d 46, 52 (2008)
6 (DOC has "broad discretion to deny entry of any materials it determines may threaten legitimate
7 penological interests, without exception for public records."). And as noted above the mail
8 plaintiff received is not entitled to greater protections because it cannot be deemed to be legal
9 mail.

10 In sum the four *Turner* factors support defendants' motion for summary judgement.
11 There is no material dispute plaintiff has failed to show DOC policy 405.100 is irrational or
12 unreasonable, or that there are alternative solutions that are easy, obvious, and of "de minimis
13 cost to valid penological interests." *Turner*, 482 U.S. at 90–91. The Court accordingly concludes
14 that defendants' actions in limiting the number of photographs plaintiff could receive in one
15 mailing did not violate his constitutional rights under the First Amendment.

16 Plaintiff also contends the DOC policy 450.100 is invalid because it is overbroad and
17 vague, and the named defendants who applied or upheld the policy therefore violated his rights.
18 "A statute is void for vagueness when it does not sufficiently identify the conduct that is
19 prohibited." *Lane v. Salazar*, 911 F.3d 942, 950 ((the Cir. 2018) (citations and quotations
20 omitted). The language of the DOC policy here is simple and clear. It clearly states inmates are
21 prohibited from receiving more than 10 photographs in one mailing. Plaintiff's vagueness
22 challenge thus fails as it cannot be reasonably said the policy does not identify the prohibition
23 involved or that a reasonable person would not comprehend the limitation.

REPORT AND RECOMMENDATION - 11

1  Additionally, the Ninth Circuit applies the *Turner* factors in determining the
2  constitutionality of prison regulations. *Perez v. Peters*, 2017 WL 507624 at * 14 (D. Or. Feb. 7,
3  2017) citing, *Bahrampour v. Lampert*, 356 F.3d 969, 976 (9th Cir. 2004) (applying the four
4  *Turner* factors to ODOC regulations and concluding on the basis of that analysis that both the
5  regulations and ODOC conduct pursuant to the regulations were constitutional). Hence based
6  upon the *Tuner* analysis above, plaintiff's claim the DOC policy is overbroad and thus invalid
7  fails.

Additional, plaintiff's due process claim fails. There is no dispute plaintiff was aware of the DOC policy, and that he was allowed to grieve the rejection of the photos the King County Prosecutor mailed. Plaintiff's due process rights were thus not violated. *See Krug v. Lutz*, 329 F.3d 692, 696–98 (9th Cir.2003) (prisoner must have notice and the right to appeal the exclusion of incoming publications to prison officials); *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir.2002) (interception of inmate mail need only be accompanied by minimum procedural safeguards).

In sum the Court recommends plaintiff's claims related to the denial of all photos mailed by the King County Prosecutor be dismissed with prejudice.

**D.  Conditions at MCC**

Plaintiff alleges defendants at MCC knowingly subjected him to a "toxic infected environment" and failed to remedy this situation in violation of the Eighth Amendment. Dkt. 6 at 21 (complaint). The Eighth Amendment protects prisoners from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials have a duty to ensure prisoners are provided, among other things adequate sanitation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Although conditions of confinement may be restrictive and

harsh, they cannot involve the "wanton and unnecessary infliction of pain" or be devoid of a legitimate penological purpose. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

When a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the plaintiff must show the alleged deprivation was "sufficiently serious" to rise to the level of an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). Second, the plaintiff must show the prison official acted with a "sufficiently culpable state of mind"; that is the official "kn[ew] of and disregarded an excessive risk to inmate health or safety . . . ." *Farmer*, 511 U.S. at 837; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("[T]he inmate must show that the prison officials had no 'reasonable' justification for the deprivation."). "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted).

Here, Plaintiff alleges defendants violated the Eighth Amendment because they knew about bad odors at the MCC, did not do anything to address the odors, and the odors increased his anxiety and mood swings, gave him headaches and made it difficult to sleep. These allegations are unsupported and fail to meet the objective or subjective prongs required to state an Eighth Amendment claim.

First, subjecting "a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment," *Anderson v. County. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995), opinion amended on denial of reh'g, 75 F.3d 448 (9th

REPORT AND RECOMMENDATION - 13

Cir. 1995), Plaintiff's allegations fail in terms of severity when compared with cases that have found an Eighth Amendment violation. *See, e.g., LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) (prisoner confined for five days in strip cell with only a pit toilet and without light, a sink, or other washing facilities), cert. denied, 414 U.S. 878, 94 (1973); *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (inmate forced to live in a feces covered cell for three days); *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) (inmate repeatedly had to live in sewage and foul water and slept on a bare mattress in water contaminated with human feces.). Thus, plaintiff's allegations are not "sufficiently serious" to rise to the level of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834.

Second, Plaintiff fails to allege any facts showing defendants deliberately disregarded an excessive risk to his health or safety. To the contrary, defendants establish they undertook considerable efforts to identify the causes of bad odors at MCC that included investigative camera pipe examinations and ultimately implementation of alterations and repairs that by August 2019 completely addressed the bad odor situation. Thus, plaintiff's conclusory allegations that imply defendants intentionally failed to take remedial actions or intentionally ignored plaintiff's complaints are unfounded.

Neither negligence nor gross negligence will constitute deliberate indifference. *See Farmer*, 511 U.S. at 835-37 & n.4. A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837. The record establishes defendants did not ignore or were not recklessly indifferent to plaintiff's complaints about the bad odors. Plaintiff's Eighth Amendment claim accordingly fails.

REPORT AND RECOMMENDATION - 14

In addition, plaintiff also alleges in a conclusory fashion the bad odors worsened his mental health problems and disrupted his sleep. But "naked assertions" or allegations that a defendant "unlawfully-harmed-me" are accusations that fail to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, plaintiff presents no factual matter which if accepted as true establish the bad odors harmed him. In contrast, defendants submitted evidence establishing plaintiff did not complain about a bad odor until he had been at MCC for four months (about March 2019), the State Department of Labor and Industry advised defendants the odors did not cause a health hazard, and plaintiff's medical records do not indicate he complained bad odors were affecting his health. The record thus establishes plaintiff has failed to establish he has suffered actual injury as a result of the bad odors. The Eighth Amendment claim accordingly fails for this additional reason and should be dismissed.

**D.      ADA Claim**

Plaintiff alleges defendants violated the ADA by exposing plaintiff to "an extreme toxic environment." *Id.* at 22. Title II of the ADA provides ". . . no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Howze c. California Dept. of Corrections and Rehabilitation*, 765 Fed. Appx. 399, 400 (2019) citing *Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997). There is no evidence

supporting the elements necessary to bring an ADA claim and the Court accordingly recommends the allegation be dismissed with prejudice.

### E. Plaintiff's Supplemental Argument Regarding Use of His Medical Records

In his response to defendants' motions for summary judgment, plaintiff argues the Court should strike defendants' use of his medical records and deny summary judgment because defendants used his medical records without his permission. Dkt. 34 at 25-26. Assuming plaintiff enjoys the right to privacy in his prison medical records, he waived the right because he placed his medical condition at issue by alleging defendants violated his Eighth Amendment rights by being indifferent to his health concerns and exacerbating various medical conditions. *See e.g. Heilman v. Vojkufka*, 2011 WL 677877 at *2 (E.D. Cal. Feb 17, 2011); *Hicks v. Neal*, 2013 WL 633116 at * 1 (N.D. Cal. Feb. 20, 2013) (Plaintiff sued mental health practitioners for inadequate mental health treatment, and thus waived any privilege and privacy rights for his medical records). Plaintiff's requests to strike and deny summary judgment should be denied.

### F. Plaintiff's Additional Conditions of Confinement Claims

Plaintiff also raised additional conditions of confinement allegations regarding "clogged dust infested air vents" in his response to summary judgment. Dkt. 34 at 24-25. These allegations were not contained in his complaint. These new allegations fall outside the original complaint and as plaintiff may not raise new allegations in response to the summary judgment motion, the allegations cannot be considered. *See e.g. Rindlisbacher v. Steinway & Sons Incorporated*, 2020 WL 6375572 at * 3-4 (D. Ariz. Oct. 30, 2020) (Court will not consider allegations presented for the first time in response to summary judgment).

## G. Plaintiff's Argument to Defer Ruling and Permit Discovery

In his response, plaintiff also argues the Court should defer ruling on the motion for summary judgment because the discovery process is not yet resolved. Dkt. 34 at 31. The Court issued a scheduling order in May 2020 directing discovery shall be completed by August 20, 2020. Dkt. 18. Plaintiff has not filed motions to extend the time for discovery or moved to compel discovery. Plaintiff now asks the Court to delay ruling on summary judgment in order to permit him to conduct further discovery. But the record shows plaintiff's discovery efforts have been dilatory, and his response fails to set forth what specific facts further discovery would reveal and fails to explain why those facts would preclude summary judgment. *See Greer v. Lockheed Martin Corp.*, 855 F. Supp. 979, 986 (N.D. Cal. 2012) citing *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir.2006). Thus, plaintiff has not established that denial or deferral of the motion for summary judgment should be granted under Fed. R. Civ. P.56(d) and additional discovery be ordered.

## H. Qualified Immunity

Defendants also argue they are entitled to qualified immunity because plaintiff cannot demonstrate defendants violated his rights. Dkt. 41 at 12. If defendants did not violate plaintiff's rights, they are not liable at all, and the Court need not decide whether qualified immunity applies.

Under the doctrine of qualified immunity, defendants do not enjoy qualified immunity if the facts "[t]aken in the light most favorable to the party asserting the injury" show "the [their] conduct violated a constitutional right" and "the right was clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court can address these two

prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). These inquiries are questions of law. *Morales v. Fry*, 873 F.3d 817, 819 (9th Cir. 2017).

Turning to plaintiff's claims regarding the DOC policy 450.100-IV, state agents such as defendants who act in reliance on a duly enacted policy or statute are ordinarily entitled to qualified immunity. *See e.g. Grossman v. City of Portland*, 33, F.3d 1200, 1209 (9th Cir. 1994). The exception involves agents who apply a patently unconstitutional policy or who enforce the policy in an unlawful manner. *Id.* Here, the DOC policy is neither unconstitutional nor was it enforced in an unlawful manner. As a lawful policy, no reasonable person would have reason to know that applying the policy to plaintiff and limiting him to 10 photographs per mailing could violate his constitutional rights. Assuming the Court needs to reach this issue, it is recommended that defendants be granted qualified immunity in regard to plaintiff's claims about the limits placed upon the number of photos he received.

As to plaintiff's claim the bad odors at MCC violated his Eighth Amendment rights, prison officials are entitled to qualified immunity where it is not clearly established the conduct complained of would violate the Eighth Amendment. *Pearson v. Callahan*, 555 U.S. 223, 243 (2009). In assessing qualified immunity, it is worth repeating the requirements of an Eighth Amendment violation. The Amendment bars prison officials from being deliberately indifferent to conditions of confinement that create a substantial risk of significant harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Thus, to prove a violation of the Eighth Amendment plaintiff must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted).

REPORT AND RECOMMENDATION - 18

Here, the evidence establishes defendants did not ignore and were not deliberately indifferent to plaintiff's complaints about bad odors. Rather they investigated the odors and made on-going efforts to both identify the cause of the odors and find a solution. The facts thus show that as a matter of law, defendants did not violate plaintiff's Eighth Amendment rights and summary judgment should be granted in their favor. What plaintiff essentially is arguing is defendants' actions in remedying the odor were insufficient or took too long. But there is no clearly established law that prison officials who struggle to find a solution to bad odors in a prison are violating a prisoner's rights by failing to remedy the odors more quickly. No reasonable prison official would have had fair notice that an unsuccessful attempt to remedy an odor problem violates the Eight Amendment.

Thus, if the Court needs to reach the issue of qualified immunity on the Eighth Amendment claim, it is recommended defendants be granted qualified immunity, and the Eighth Amendment claim be dismissed with prejudice.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **December 9, 2020.** The Clerk should note the matter for **December 11, 2020**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.

The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed 15 pages. The failure to timely object may affect the right to appeal.

DATED this 25th day of November, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 20