1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOJO DEOGRACIAS EJONGA,

    Plaintiff,

    v.

STEPHEN SINCLAIR, *et al.*,

    Defendants.

CASE NO. C20-0320-RSM-BAT

ORDER ADOPTING REPORT AND
RECOMMENDATION AND
DISMISSING CASE

## I.    INTRODUCTION

This matter comes before the Court on the Report and Recommendation ("R & R") of the Honorable Brian A. Tsuchida, United States Magistrate Judge.  Dkt. #45.  The R & R recommends granting Defendants' motion for summary judgment and dismissing this case with prejudice. Plaintiff has filed objections to the R & R.  Dkt. #53.  Having considered the R & R, Plaintiff's Objections, the Government's Response, and the remainder of the record, the Court ADOPTS the R & R and dismisses this case.

//

//

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 1

## II. BACKGROUND

The Court adopts and incorporates by reference the factual background set forth in the R & R. Dkt. #45 at 2-6. Plaintiff Jojo Ejonga, proceeding pro se and *in forma pauperis*, is currently confined at the Washington Department of Corrections, Monroe Correctional Complex ("MCC"). Plaintiff claims that since 2013, he has been in the process of appealing his criminal case. Dkt. #6 at 15. On December 17, 2017, in response to Plaintiff's public records request to the King County Prosecutor's Office, Deputy Prosecutor Johnson sent 138 photos to Plaintiff at the Washington State Penitentiary related to his criminal case. *Id.* at 16. On December 20, 2017, Plaintiff received a rejection notice that the 138 photos violated the Washington Department of Corrections policy 450.100-IV, which limits inmates to receiving no more than ten photos per mailing. Accordingly, mailroom staff forwarded the first ten photos to Plaintiff and rejected the remaining photos. Plaintiff claims that Carla Schettler, Associate Superintendent of Washington State Penitentiary, and Roy Gonzalez, Headquarters Correctional Manager, were involved in denying him receipt of the photos. *Id.* at 17.

In November 2018, Plaintiff was transferred to MCC and placed in a one-person cell on the first floor. *Id.* Plaintiff thereafter filed a grievance that the unit smelled badly and was not adequately ventilated, leading him to suffer headaches, worsening mental health problems, and difficulty eating, breathing and sleeping. *Id.* at 17-18. Plaintiff claims that attempts to appeal the denial of his grievance were unsuccessful. He alleges that his grievance was handled by Lee Stemler, CS2 Grievance Coordinator at MCC, who consulted with David Heise, the Construction/Maintenance Supervisor at MCC.

//

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 2

On February 27, 2020, Plaintiff initiated this 42 U.S.C. § 1983 action against Stephen Sinclair, Secretary of Department of Corrections; Michael Obenland, Superintendent of MCC; the Department of Corrections ("DOC") and Schettler, Gonzalez, Stemler, and Heise ("Defendants").  Dkt. #1.  Plaintiff claims that Defendants violated his constitutional rights and the Americans with Disabilities Act ("ADA").  Dkt. #6 at 14.  Counts I and IV allege that Defendants Schettler, Gonzalez and Sinclair violated his First Amendment rights by refusing to allow him to receive all 138 photos from the Prosecutor's Office pursuant to DOC policy 450.100-IV.  *Id.* at 20.  Count II alleges that Defendants Schettler and Gonzalez violated his Fourteenth Amendment rights by enforcing DOC policy 450.100-IV because the policy is unconstitutionally overbroad, ambiguous and vague.  *Id.*  Count III alleges that Defendants Obenland, Russell, Stemler and Heise violated his Eighth Amendment rights due to the conditions they subjected him to at MCC.  *Id.* at 21.  Finally, Count V alleges that Defendants Obenland, Russell, Stemler, and DOC violated the ADA by exposing Plaintiff to "an extreme toxic environment."  *Id.* at 22.  In addition to monetary damages, Plaintiff seeks injunctive relief in the form of revising DOC policy that limits the volume of mail a prisoner may receive and directing Defendants to address his concerns regarding conditions at MCC.  *Id.* at 22-23.

Defendants moved for summary judgment of Plaintiff's claims on September 29, 2020, which the R & R recommends granting.  Dkt. #45.  The R & R further concluded that Plaintiff's requests to strike and deny summary judgment based on Defendants' use of his medical records without permission should be denied.  *Id.* at 16.

//

//

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 3

### III.   DISCUSSION

**A. Legal Standards**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the report and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, (1986). Material facts are those which might affect the outcome of the suit under governing law. *Id.* at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.,* 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992)). The court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy,* 365 F.3d 827, 832 (9th Cir. 2004). However, the non-moving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

//

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 4

**B. Motion for Over-Length Brief**

Plaintiff has filed a Motion for Leave to File an Over-Length Brief. Dkt. #52. Given that the Government does not oppose Plaintiff's motion and Plaintiff's Objections only exceed the 15-page limit by one page, the Court GRANTS Plaintiff's motion.

**C. Plaintiff's Objections**

Plaintiff argues that the R & R erred in dismissing his claims under the First, Fourteenth, and Eighth Amendments. Dkt. #53 at 3-17. Plaintiff also objects to the R & R denying his arguments related to Defendants' unauthorized release of his medical records. *Id.* at 13-15. The Court will address each issue in turn.

     i.    First Amendment Violations related to Mail (Counts I, IV)

Counts I and IV claim that DOC's policy of limiting the number of photos inmates may receive per mailing to ten photos infringes on Plaintiff's First Amendment rights. Dkt. #6 at 20. Prisoners' constitutional rights "are subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security." *Walker v. Sumner,* 917 F.2d 382, 385 (9th Cir. 1990). For that reason, "prison policies that infringe upon this First Amendment right of communication will be upheld if 'reasonably related to legitimate penological interests.'" *Prison Legal News v. Lehman*, 272 F. Supp. 2d 1151, 1155 (W.D. Wash. 2003), *aff'd*, 397 F.3d 692 (9th Cir. 2005) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)).

The Supreme Court's test under *Turner* sets forth the standard for evaluating prisoners' constitutional claims. *Walker*, 917 F. 2d at 385. This test is a four-factor inquiry to determine whether a challenged regulation is "reasonably related to legitimate penological interests":

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 5

(1) whether the regulation is rationally related to a legitimate and neutral governmental objective;
(2) whether there are alternative avenues that remain open to the inmates to exercise the right;
(3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and
(4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*Turner,* 482 U.S. at 89.  Courts must give "considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world," though the *Turner* test "is not toothless."  *Thornburgh v. Abbott,* 490 U.S. 401, 408 (1989).

In granting summary judgment in favor of Defendants, the R & R concluded that Plaintiff failed to raise a genuine dispute of fact as to whether rejection of his incoming mail was "not reasonably related to legitimate penological interests."  Dkt. #45 at 9.  Specifically, the R & R determined that the limit of ten photos per mailing supported the legitimate and neutral objective of DOC to (1) limit the trading and selling of photos between inmates and (2) prevent unlimited numbers of photos from taxing the resources of the Department due to time and resources spent sorting and processing inmates' mail.  *Id.* at 10.  The R & R also reasoned that Plaintiff could have requested that the photos be mailed in batches of ten, in compliance with DOC policy, and therefore had an alternative means to receive the photos.  *Id.*

Plaintiff objects that the R & R failed to consider that his photos were obtained by a public records request, and that case law and state statutes entitle him to these records.  Dkt. #53 at 7-8.  Plaintiff relies on a line of cases that affirm the public's right to access government records.  *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (right of public access to criminal trial); *Spokane Rsch. & Def. Fund v. City of Spokane*, 155 Wash. 2d 89, 100, 117 P.3d 1117, 1123

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 6

(2005) (journalist's right of access to city records); *Hearst Corp. v. Hoppe*, 90 Wash. 2d 123, 580 P.2d 246 (1978) (newspaper's right to access county records).  Plaintiff also relies on RCW 42.17.010, recodified as 42.17A.001, which provides that "full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society." RCW 42.17A.001(11).  These authorities are inapposite here, given that Plaintiff is a prisoner in DOC custody.  His First Amendment rights as a member of the public—including right to access public records—may therefore be restricted as a condition of confinement so long as they are reasonably related to DOC's legitimate penological interests.  *Turner*, 482 U.S. at 95; *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Plaintiff's objection does not raise a material dispute of fact as to DOC's articulated interests in (1) conserving DOC resources required to visually inspect each photograph; (2) limiting the trading and selling of photos between inmates; and (3) ensuring that inmates remain within limitation of personal property storage.  *See* Dkt. #23 at ¶¶ 4-6.  The Court agrees that these objectives are legitimate penological interests that are advanced by imposing a ten-photo limit.

Plaintiff also objects to the weight the R & R gave the Government's asserted penological interests, on the basis that "declarant and the defendant are making claims that they themsel[ves] never witnessed . . . ."  Dkt. #53 at 6.  The Court finds that the sworn declaration from Tracy Schneider, Correction Manager at MCC, sufficiently establishes DOC's penological interests. *See* Dkt. #23. Plaintiff's conclusory assertions that Schneider or other defendants did not personally witness mailroom issues do not raise a material dispute of fact that DOC policy 450.100-IV advances legitimate penological interests.

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 7

1    Plaintiff also objects that DOC is required to make individual determinations on whether

2    materials entering the facility should be limited based on legitimate penological interests.  Dkt.

3    #53 at 7 (citing *Livingston v. Cedeno*, 164 Wash. 2d 46, 55, 186 P.3d 1055, 1059 (2008)).

4    However, *Livingston* does not stand for the proposition that DOC must individually determine

5    whether each inmate's mail may proceed as opposed to instituting regulations that apply across

6    DOC.  On the contrary, it upheld a state law authorizing the Department to confiscate materials

7    that it determined were threats to a facility's security and order.  *Livingston*, 164 Wash. 2d at 57

8    ("We find no conflict between RCW 72.09.530 and the public records act, chapter 42.56 RCW. .

9    . . While the public records act is intended to provide broad access to public records to ensure

10   government accountability, RCW 72.09.530 is intended to protect legitimate security concerns

11   within the state penal institutions.").  For that reason, not only does *Livingston* fail to support

12   Plaintiff's argument, but it undermines Plaintiff's position that DOC restrictions on incoming

13   prison mail violate his First Amendment right to access public records.

14   Finally, Plaintiff objects that requesting the photos be sent in mailings with ten photos

15   each would be "laughable" and "will be time consuming, and will create hardship on the

16   plaintiff."  Dkt. #53 at 5-6.  It is unclear to the Court how requesting that the Prosecutor's Office

17   or an intermediary recipient divide the photos and mail them to Plaintiff in separate envelopes

18   would impose a burden on the Plaintiff, and Plaintiff has failed to present any evidence to support

19   this conclusory argument.  The Court therefore finds no material dispute of fact that there are

20   alternative means to receive the photos that would comply with DOC policy's ten-photo limit.

21   //

22   //

23

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 8

ii.      Fourteenth Amendment Violation related to Mail (Count II)

Count II claims that DOC policy 450.100 is vague, ambiguous, overbroad, and violates Plaintiff's due process rights under the Fourteenth Amendment. "A statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited." *Lane v. Salazar*, 911 F.3d 942, 950 (9th Cir. 2018) (citations and quotations omitted). Having considered the text of 450.100, the Court agrees with the R & R that that the language of DOC's policy "is simple and clear." Dkt. #45 at 11. Plaintiff has raised no material dispute of fact that the policy is confusing or fails to reasonably identify the prohibition on more than ten photos per mailing.

Furthermore, to the extent Plaintiff objects to the R & R's analysis of his due process claims, the *Turner* factors also apply to the constitutionality of prison regulations and conduct by staff taken pursuant to those regulations. *Bahrampour v. Lampert*, 356 F.3d 969, 976 (9th Cir. 2004). As set forth above with respect to Plaintiff's First Amendment claims, Plaintiff has failed to raise a material dispute of fact as to whether the regulation is rationally related to a legitimate and neutral governmental objective, whether there are alternative avenues open to receiving the 138 photos, or whether accommodating his asserted right would negatively affect the allocation of prison resources. *See Turner,* 482 U.S. at 89 (setting forth factors). Accordingly, he has failed to raise a material dispute of fact as to his Fourteenth Amendment claims.

iii.     Eighth Amendment Violation for Conditions at MCC (Count III)

Count III alleges that conditions at MCC, including a toxic environment "infested by mold," smell of urine and/or sewage, and lack of fresh air without proper ventilation, constitute cruel and unusual punishment. Dkt. #6 at 21. Under the Eighth Amendment, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation,

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 9

medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The Eighth Amendment's prohibition on cruel and unusual punishment prevents government officials from acting with deliberate indifference to a prisoner's health and safety, *Hope v. Pelzer*, 536 U.S. 730, 737–38 (2002), or serious medical needs, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove a violation of the Eighth Amendment, a plaintiff must meet both an objective and subjective test for deliberate indifference: he must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). The subjective "deliberate indifference" test requires showing that (1) prison officials were aware of a "substantial risk of serious harm" to his health or safety; and (2) that prison officials had no "reasonable" justification for the deprivation in spite of the risk. *Thomas v. Ponder*, 611 F.3d 1144, 1150–51 (9th Cir. 2010).

1. Objective Test

First, the Court finds that Plaintiff has failed to raise a material dispute of fact that he was deprived of something "sufficiently serious" so as to violate the Eighth Amendment. Courts have found that poor sanitary conditions—including noxious fumes, persistent odors, poor ventilation, or presence of mold—comprise Eighth Amendment violations where the conditions "undermine[] the health of inmates and the sanitation of the penitentiary." *McDaniels v. Elfo*, No. C12-1289-TSZ-MAT, 2013 WL 7231585, at *20 (W.D. Wash. Nov. 14, 2013) (quoting *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996)) (internal quotations omitted).

//

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 10

1    Here, Plaintiff alleges that conditions at MCC have caused him to experience migraine

2    headaches, dizziness and lack of sleep which increase his anxiety and mood swings and aggravate

3    his mental health.  Dkt. #6 at 18.  The Court agrees with the R & R that Plaintiff has failed to

4    support his claims that conditions at MCC have adversely affected his health.  On the contrary,

5    since Plaintiff's transfer to MCC in November 2018, his medical and mental health providers

6    reported either "smiling . . . in a content mood with a congruent affect" or agitation due to PTSD

7    symptoms or from interactions with other people in his unit.  *See* Dkt. #24-2 at 15-19.  None of

8    the reports reference the concerns Plaintiff raises in this action, such as a sewage smell, mold, or

9    poor ventilation.  Furthermore, Plaintiff's health records reflect that prior to his transfer to MCC,

10   he experienced the same symptoms he now complains of here, including headache, nausea and

11   vomiting from migraines due to childhood traumatic brain injury, as well as anxiety, insomnia

12   and depression.  *Id.* at 2-3.  Finally, when notified of his custody level promotion to MI3 custody,

13   Plaintiff expressed a desire to remain in his unit, contradicting claims that his living conditions

14   since arriving at MCC have been toxic.  Dkts. #24-3 at 2; #24-4 at 5.

15   In his Objections, Plaintiff introduces new evidence in the form of declarations from eight

16   other inmates reporting smells of sewage, mold and poor ventilation at MCC.  *See* Dkt. #53 at

17   43-48; Dkt. #53-1 at 1-17.  While the inmates report suffering from nausea, headaches and loss

18   of appetite that they believe are tied to the smell and mold in the C/D units at MCC, *see id.*, they

19   are inconsistent as to the problem they urge MCC to address.  While some state that the mold

20   issue is "always present" in the unit showers, others report that the mold problem is isolated to

21   the first-floor showers.  *See* Dkt. #53 at 46-47.  Other declarations make no mention of the mold

22   issue and only reference the sewage smell.  *See* Dkt. #53-1 at 8.  The declarations are likewise

23

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 11

1   vague and inconsistent as to the source and frequency of the smell.  *See, e.g.*, Dkt. #53 at 46

2   (Inmate since June 2019 declaring, "I have experienced disgusting smells at this facility, from

3   sewer gases and human waste to musty mildew and mold.").  Some inmates report that the stench

4   originates from sewer grates, Dkt. #53-1 at 11, while others state that the smell is strongest in the

5   showers and the microwave room's drain or inside the sinks, *id.* at 1-2, or when the exhaust fan

6   kicks on.  Dkt. #53 at 47.  Moreover, none of these declarations provide support for Plaintiff's

7   claims that his health has been adversely affected by mold and/or odor conditions at MCC.

8          The Court agrees that these declarations support the undisputed fact that a noxious

9   sewage-smelling odor has been occurring at MCC.  However, considering this evidence in the

10  light most favorable to Plaintiff, the Court finds that the conclusory and inconsistent declarations

11  do not raise a material dispute of fact that Plaintiff has been subjected to odor, ventilation and

12  mold issues sufficiently severe so as to undermine his health and the sanitation of the facility.

13                 2.   Subjective Test

14         Even if Plaintiff met his burden on the objective test, he has failed to raise a material

15  dispute of fact that prison officials were aware of a substantial risk of serious harm to Plaintiff

16  and had no reasonable justification for failing to remedy the issue.  On the contrary, the record is

17  replete with efforts taken by MCC officials to identify the source of the smell and attempt to

18  rectify it.  Plaintiff objects that MCC staff are using the biosolids theory of the smell as an excuse

19  rather than addressing the building's 90-year-old pipes, Dkt. #53 at 9-10, yet Defendants provide

20  evidence of maintenance staff's extensive efforts to resolve the issue through examining the

21  building's pipes and ventilation systems.  From 2017 to 2019, staff investigated the source of the

22  smell and attempted to stop it by replacing HVAC equipment, retrofitting the exhaust in showers,

23

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 12

pouring mineral oil down floor drains to seal traps and prevent sewer gas from escaping, installing "flapper" valves in all shower drains, removing sinks from old laundry rooms where sewer gas drained into the space, and repairing a leak in a main pipe under the scullery. Dkt. #26 at ¶¶ 6-8. Defendants' theory on why the smell returned, related to dewatering of biosolids from the waste treatment facility outside, is now their "operating theory." Dkt. #43 at ¶ 4. However, they concede that because the odor temporarily disappears and then reappears, it is difficult to detect and remedy the issue. *Id.* at ¶ 3.

None of the evidence presented by Plaintiff raises a material dispute of fact that Defendants have no "reasonable" justification for failing to promptly remedy the sewage odor. On the contrary, the evidence he introduces with his Objections only corroborates the Government's efforts to identify the cause of problem and ensure that conditions remain safe for inmates. This evidence includes a grievance filed by inmate Penwell about the sewage odor, which includes MCC staff's response describing their investigation into issue and noting tests conducted by DOC, the Snohomish County Health Department, MCC Maintenance, Labor & Industries, to ensure that air quality in the unit was safe. Dkt. #53 at 29. Plaintiff also includes a Tier Rep Meeting Report discussing smells in the C/D units, which reiterated that HVAC issues were considered a "top priority" by staff. Dkt. #53 at 32. Meeting minutes from an October 2020 Local Family Council Skype similarly reiterate MCC's awareness of the smell issues and despite efforts to address, it "pops up again. Maintenance continues to attempt resolution." *Id.* at 39. Considering this evidence in the light most favorable to Plaintiff, the Court cannot conclude that these reports demonstrate deliberate indifference by prison officials.

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 13

Furthermore, while the inmate declarations attached to Plaintiff's Objections describe sewage smells and mold conditions, only two discuss prison officials' failure to adequately address the issue.  Mr. Wright's declaration states that "administration has failed to address the problems" despite inmates complaining repeatedly about sewer fumes and moldy showers.  Dkt. #53-1 at 16.  However, Mr. Wright states that he had only been at MCC for "almost five months" at the time he wrote his declaration.  *Id.*  Given the protracted nature of the odor problems at MCC, the Court finds Mr. Wright's declaration insufficient to raise a material dispute as to officials' years-long efforts to identify the source and cause of the smells—many of which preceded his arrival at MCC.  Mr. Robledo's declaration similarly states that "DOC staff routinely ignores this problem or makes excuses, claiming the odor originates from another source."  Dkt. #53-1 at 8.  This declaration provides no information as to when Mr. Robledo entered the facility and to what extent his time at MCC has overlapped with Plaintiff's.  Consequently, it provides no support for the contention that officials are aware of a substantial risk to inmates' health and are without reasonable justification for failing to remedy it.

Accordingly, the Court finds that the R & R correctly determined that Plaintiff failed to raise a material dispute of fact as to his Eighth Amendment claims.

       iv.      ADA Violations (Count V)

Plaintiff did not object to the R & R granting summary judgment dismissal of his claims under the ADA (Count V).  *See generally* Dkt. #53.  The Court finds no error in Judge Tsuchida's analysis with respect to dismissal of Plaintiff's ADA claims.  Accordingly, the Court adopts the R & R as to Count V and dismisses Plaintiff's claims under the ADA.  Fed. R. Civ. P. 72(b).

//

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 14

**D.   Unauthorized Release of Medical Records**

Finally, Plaintiff argues that Judge Tsuchida misapplied the law regarding Defendants' unauthorized release of his medical records.  Dkt. #53 at 15-17.  Plaintiff cites regulations under the Health Insurance Portability and Accountability Act ("HIPAA"), state and federal case law, and the Federal Rules of Evidence in support of his argument that his health records should have been treated as privileged and were not subject to disclosure.  *Id.*

The Court finds that the R & R correctly determined that to the extent Plaintiff has a right to privacy in his prison medical records, he waived such a right by placing his medical and mental health conditions at issue in his Eighth Amendment claims.  *See Heilman v. Vojkufka*, No. CIV S-08-2788, 2011 WL 677877, at *2 (E.D. Cal. Feb. 17, 2011), *report and recommendation adopted*, No. CIV S-08-2788 KJM, 2011 WL 3881023 (E.D. Cal. Sept. 2, 2011) ("Assuming that prisoners do enjoy a constitutional right to privacy in their prison medical records, such a right is waived when the a prisoner places his or her medical condition at issue in a lawsuit."); *Hicks v. Neal*, 2013 WL 633116 at *1 (N.D. Cal. Feb. 20, 2013) ("Plaintiff has sued mental health practitioners for allegedly failing and refusing to adequately treat his mental illness, and thus has put his mental health at issue in this action.  In so doing, he has waived any privilege and privacy rights for his medical records that contain information about his mental health.").  As in *Hicks*, Defendants' response to Plaintiff's health issues are "at the very core" of his Eighth Amendment claims.  *Id.*  Accordingly, the R & R correctly dismissed his privilege argument.

## IV.    CONCLUSION

Having reviewed the Report and Recommendation of the Honorable Brian A. Tsuchida, United States Magistrate Judge, and the remaining record, the Court finds and ORDERS:

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 15

(1)     The Court ADOPTS the Report and Recommendation, Dkt. #45.

(2)     The case is DISMISSED with prejudice.

(3)     Plaintiff's Motion for Leave to File Over-Length Brief, Dkt. #52, is GRANTED.

(4)     The Clerk is directed to send copies of this Order to the parties and to Judge Tsuchida.


DATED this 15th day of March, 2021.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING CASE
PAGE - 16